UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN ENNEN and CAROL SANDVIG,

    Plaintiffs,

  v.

AMERICAN GENERAL LIFE
INSURANCE COMPANY, et al.,

    Defendants.

CASE NO. C09-1655MJP

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed

1. Plaintiffs' Motion for Summary Judgment (Dkt. No. 13)

2. Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment (Dkt. No. 17)

3. Plaintiffs' Reply to American General's Opposition to Motion for Summary Judgment (Dkt. No. 20)

4. Plaintiffs' Response to American General's Motion for Summary Judgment (Dkt. No. 23)

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT- 1

1    5. Defendants' Reply in Support of Cross-Motion for Summary Judgment (Dkt. No. 25)

2  and all attached declarations and exhibits, makes the following ruling:

3    IT IS ORDERED that Plaintiffs' motion for summary judgment is PARTIALLY

4  GRANTED and PARTIALLY DENIED: they are awarded the policy benefit in the amount of

5  $50,000 and interest thereon, which will be reduced by an amount to be calculated as described

6  below.

7    IT IS FURTHER ORDERED that Plaintiffs' request for attorney fees will be postponed

8  until further calculation is completed.

9    IT IS FURTHER ORDERED that Defendants' motion for summary judgment is

10  DENIED.

11  **Background**

12    Herbert Ennen (Ennen) was covered by a "Pre-Funded Retired Lives Reserve Term Life

13  Insurance policy" initially issued in December 1988 by Capitol Bankers Life Insurance Company

14  (Capital Bankers) to Ennen's employer Ennen Food Stores (EFS). EFS paid Capitol Bankers an

15  initial lump sum payment of $16,668.34 into an "Employer Reserve" for his coverage. Although

16  the lump sum was intended to cover Ennen for the rest of his life, it was an "open funded" policy

17  – if the initial deposit of funds was depleted, the insurance company could upon notice require

18  additional deposits to be paid or terminate the policy. Pltfs Ex. 3, p.6, ¶ 5.7. In 1994, Ennen

19  executed a Beneficiary Change Card with Franklin and made the Plaintiffs (his children John

20  Ennen and Carol Sandvig) the beneficiaries of the policy. Plaintiffs Ex. 5. According to the

21  uncontroverted evidence of Defendants, the initial EFS Employer Reserve for Ennen's policy

22  was depleted in January 1999. Barrett Decl, ¶ 5. There is no record that notice of additional

23

24

deposits, notice of lapse or notice of termination of the policy was ever sent or received by Defendants, EFS, or Plaintiffs.

Capitol Bankers sold a book of business (including Ennen's policy) to Franklin Life Insurance Company (Franklin). Although EFS switched its retired lives reserve plan to yet another company in 1994, they maintained Ennen's policy with Franklin. In 1995, Defendant American General Life Insurance Company (American General) acquired Franklin. EFS was sold to Brown & Cole, which went into bankruptcy and was acquired by Hancock Park Associates in December 2007. John Ennen Decl., ¶ 3.

In 2008, the insurance broker (Mr. Birkland) who had set EFS up with the retired lives reserve policies contacted American General to advise them that Ennen was terminally ill and Birkland would shortly be filing a claim. Following Ennen's death in April 2008, Birkland tried to obtain a death claim form from American General and was told that the company did not show the policy to be active. Plaintiffs contacted the Washington Insurance Commissioner, who contacted American General and was informed that Ennen's funds were depleted at the end of December 1998 and his policy was terminated in January of 1999. Birkland Decl. ¶¶ 3, 8. There is no record in Birkland's or Ennen's files of a lapse or termination notice, and American General's investigation revealed no evidence that they ever sent a premium due, lapse or termination notice.

Plaintiffs initiated this action to recover the benefits which they claim they are owed under the policy and have moved for summary judgment on that issue. Defendants have cross-motioned for summary of dismissal on the grounds that (1) the policy was effectively canceled upon the depletion of the Employer Reserve and failure to further fund the policy; or (2) even if

the insurer breached, whatever recovery Plaintiffs might be entitled to would be wiped out by the offset of the money required to bring the lapsed policy current.

**Discussion**

Cancelation of the policy

      The Court first addresses the issue of whether, in the absence of any record of the insurance company having notified the policyholder of further deposits owing, lapse of payments or termination of the policy, the policy can truly be said to have been canceled and, with it, Defendants' obligation to convey the claim amount to Plaintiffs.

      It is undisputed that neither Ennen, EFS nor the life insurance broker received notice of additional premiums, lapse or termination from American General and that American General has no record of having sent any such notices. The contract required the insurance company to send employers advance notice of deposits due, gave employers a grace period to pay the deposits following notice and further required a written notice prior to suspension/termination. Plaintiffs argue that, in the absence of proof of cancelation, the policy was still in effect without the necessity of further payments and they are entitled to the proceeds.

      On this issue Defendants contend that, even in the absence of any proof that notice of any kind was either sent or received, the Court is still required to find that the best available evidence is that of American General's ordinary business practice, which is probative of what *likely* occurred when the funding of Ennen's policy was depleted; i.e., that the notices of additional premium, lapse and termination were mailed out in accordance with its regular procedures. Defendants rely on the holding of Hotaling, MD v. Chubb Sovereign Life Insurance, 241 F.3d 572 (7th Cir. 2001) for their argument that evidence of their customary business practice will suffice to establish the mailing of a payment due notice. The Court is not persuaded. The

1  Hotaling court had before it detailed records documenting systematic computerized mailing
2  procedures and evidence that the persons before and after the insured on the company's mailing
3  list had both paid their premiums.  Additionally, Chubb was able to present records of two
4  follow-up notices to the insured.  On that basis, the Seventh Circuit was willing to find that
5  "proof of routine, customary computerized procedures is sufficient to show adherence to such
6  procedures."  Yessick v. Midland Life Ins. Co., 170 F. Supp. 2d 1301, 1304-05 (N.D. Ga. 2001)
7  (citing Hotaling).

8    Defendants have provided no such evidence here, relying on testamentary declarations
9  that it has a standard operating procedure without providing proof of what that procedure is.
10 Furthermore, Plaintiffs have evidence from Defendants' records that somehow Ennen's policy
11 became one that was tracked manually by one of the American General's employees.  Ex. 22, p.
12 4.  Therefore, there was no proof possible of the kind of automated tracking and notice system
13 that the Hotaling court was willing to rely on.  Plaintiffs are correct that there is no proof that
14 American General effectively canceled Ennen's policy.

15   The Court further finds, based on the failure to notify EFS of the depleted Employer
16 Reserve as required by their contract or of the policy cancelation, that Defendants breached the
17 contract in January 1999 when they unilaterally terminated the policy without notifying the
18 affected parties.

19   Breach and damages

20   Plaintiffs base their position that the policy remained in effect without the requirement of
21 additional premiums on the declaration of Mr. Birkland, the insurance broker who assisted EFS
22 in signing up for Defendants' policy:
23     The $16,668.34 premium … was based on the concept of a single premium whole
       life policy.  For that premium Capitol Bankers committed to insuring Mr. Ennen
24

1           for the rest of his life, subject to its right to bill an additional premium if its calculations changed. In purpose and effect, this was a whole life policy unless
2           and until the life insurance company declared otherwise.

3 Supplemental Decl. of Birkland, ¶ 3. In the absence of any notice from the insurer, the policy

4 could not lapse, according to Plaintiffs' expert – this was not, in his words, "an annual renewable

5 term policy." Id.

6       But this is not the language of the contract. The policy provides for "open funding" and

7 "closed funding" options and Plaintiffs do not dispute that Ennen was the recipient of an "open

8 funding" policy. This meant that, although the initial funding amount was intended to fund the

9 policy fully, "the company reserved the right to calculate and charge additional premiums if its

10 actuarial assumptions were incorrect. The company alone formulated actuarial assumptions and

11 calculated the premiums." Birkland Decl., ¶ 3.

12       There is no question that the policy also required the insurer to "immediately notify the

13 Employer of the Deposit required to increase the Employer Reserve to the amount due" in the

14 event that the premiums due exceeded the Employer Reserve. Retired Lives Reserve Contract,

15 Ex. 3, ¶ 5.7. At issue here is the effect of a failure to notify if and when the insurer calculated

16 that additional payments were due. Plaintiffs' expert asserts that "[i]t was my understanding

17 that, unless and until [the insurer] revised its calculations and billed an additional premium, the

18 original premium remained in effect." Birkland Decl., ¶ 3.

19       But Birkland's "understanding" is not a fact, nor is it sufficient to create a disputed issue

20 of material fact. The undisputed fact is that Defendants have calculated that the initial funding

21 sum for Ennen's policy was depleted in January of 1999. Barrett Decl., ¶ 7. Defendants' failure

22 to provide notice of the additional premiums, the lapse or their termination of the policy does not

23 mean that the policy remains in effect at the initial funding amount, it simply means that the

24

insurer was in breach for failure to provide the notice which the contract called for. Even if the Court were to adopt Plaintiffs' position that the policy somehow remained in effect throughout the period where no notice of lapse or termination was sent, Defendants' refusal to pay the contracted-for benefit at time of death places them (again) in breach. The issue is not whether Defendants have breached their policy, but what the proper remedy for that breach might be.

Defendants argue that, under the measure of damages recognized by Washington law, Plaintiffs' claim fails as a matter of law because the amount of money required to bring the policy "paid up" to the date of Ennen's death (which they calculate at over $81,000; Barrett Decl., ¶ 7) exceeds the benefits payable under the policy. The Court agrees that the correct measure of damages appears to be that enunciated in Franklin v. Northern Life Ins. Co., 4 Wn.2d 541, 569 (1940) -- the present value of the policy minus the premiums that would have had to be paid in order to keep the policy in effect; *see also* Continental Assurance Co. v. Supreme Constr. Co., 375 F.2d 378 (5th Cir. 1967). Plaintiffs attempt to distinguish Franklin and Continental on the grounds that in those cases the policy was canceled, whereas in this case the policy was still in effect (because no notice of cancelation had been received). This is not a meaningful distinction – whether Defendants wrongfully canceled the policy (without giving proper notice) or wrongfully breached the contract by refusing to pay when notified of Ennen's death, the measure of damages remains the same.

This does not end the inquiry or carry the day for Defendants, however. The calculation of the amount owing to Defendants remains an open question. Defendants argue strenuously that Franklin is the controlling case on this issue. But the Franklin court, upon finding that the policy had been wrongfully canceled, did not simply (as Defendants want this Court to do) accept the

insurer's representations regarding what the rates would have been in the succeeding years and offset the policy benefit by that amount. The Washington Supreme Court found instead:

> Under the contract of insurance, the rate once established continues in effect year after year until there is a later recalculation and a new rate established. The repudiation of the contact was not due to any fault of appellant and that there can be no further calculations is not appellant's fault – the fault is that of respondent who chose to cancel the policy. . . The last premium rate in effect was $2 monthly. No different rate was ever established. Under the terms of the policy the existing rate would continue in force, hence the premium rate of $2 monthly should be used in calculating the present value of appellant's policy. 4 Wn.2d at 568.

The Court finds the facts of the instant case to present an analogous circumstance. The repudiation of the Retired Lives Reserve Contract (occasioned by the failure to notify the employer of the need for additional deposits) was not due to any fault of Ennen, EFS or the Plaintiffs – the fault is that of the insurer who breached the policy. Although there was no rate established by the Retired Lives Reserve Life Insurance policy (as there was in the policy at issue in Franklin), there are equitable considerations which favor a similar ruling that Defendants be held to the last known rate they were charging prior to the wrongful cancelation.

The Court bases this portion of its ruling on the finding that Defendants' failure to notify placed EFS in a highly disadvantageous position. What was denied to the employer by Defendants' failure to provide notice of the need for further payments were the "further calculations" to which the Franklin court refers; specifically, through no fault of its own EFS was denied the opportunity to assess whether it wished to continue the policy in effect at whatever rate increases the insurer felt were required. Furthermore, just as no different rate was established in the Franklin case, so no additional payments were noticed (and no different rate established) in this matter. If Franklin is indeed the controlling case on this issue, it would seem

imperative that this Court adopt the further measure of damages which requires the breaching party to calculate the payments owed to it at the last rate of which the parties had notice.

Defendants will be required, within seven days of the filing of this order, to file with the Court proof of the prevailing rate at the time of cancelation (January 1999) and a computation of the total amount required to maintain Ennen's life insurance policy at that rate from the date of depletion until his death. Plaintiffs will be given an opportunity to contest that calculation if they choose by filing a response within seven days of the filing of Defendants' materials.

Plaintiffs' request for an award of attorney's fees and costs pursuant to ERISA must be deferred until the final calculation of their policy benefit (if any) once the offsetting costs are subtracted according to the Franklin formula. There can be no determination of whether either side has achieved "success on the merits" of its case until that determination is finalized.

## Conclusion

Defendants breached the contract by failing to provide notice to EFS or Ennen of the depletion of the Employer Reserve and the requirement of additional deposits to keep the policy current. The proper measure of damages for that breach is the amount of the policy benefit (plus interest) minus the amount required to keep the policy current (plus interest) from the date of lapse to the date of the policyholder's death. Defendants must calculate that amount using the rate in effect at the time that the policy lapsed.

Defendants must provide the Court and Plaintiffs with their proof of offset within seven days of the date of this order; if Plaintiffs choose to respond, they must do so within seven days of the filing of Defendants' materials.

1    The clerk is ordered to provide copies of this order to all counsel.

2    Dated October 22, 2010.

	
												Marsha J. Pechman
												United States District Judge